IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Timothy Randolph Fletcher ) | **Complaint for Violation of** |
| ) | **Civil Rights: Two Counts** |
| **-against-** ) | |
| ) | |
| Facebook, Inc., A Delaware Corporation ) | Case #  3:25-cv-02276-VC |
| ) | May 14, 2025 |
| Meta Platforms, Inc., A Delaware Corporation ) | Non Jury Trial |
| ) | |
| Numerous Unknown Facebook, Inc. Employees ) | |
| ) | |
| Numerous Unknown Meta Platforms, Inc. Employees ) | |
| ) | |
| Numerous Unknown US Government Employees ) | |
| ) | |
| Numerous Unknown Non-Governmental Organizations ) | |
| ) | |
| Numerous Unknown Co-Conspirators ) | |

**Second Amended Complaint**

PLAINTIFF is suing the DEFENDANTS for money damages totaling fourteen million US dollars ($14,000,000.00) and STATES:

**Jurisdictional Allegations**

1. This is a Federal Questions case under 28 U.S.C. § 1331.

2. Public Forum doctrine is at issue in this case.

3. The Sherman Act is at issue in this case.

4. 47 U.S.C., Chapter 5, Subchapter II, Common Carrier Regulation is at issue in this case.

5. Bevens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) is at issue in this case.

6. 18 U.S.C., Chapter 13 § 241, Conspiracy Against Rights is at issue in this case.

7. The Americans with Disabilities Act is at issue in this case.

8. This is a Diversity of Citizenship case under 28 U.S.C. § 1332.

9. This is an action for money damages in excess of $75,000.

10. At all times material to this lawsuit, Facebook, Inc. - now Meta Platforms, Inc. - was engaged in business in Menlo Park, California.

11. All acts necessary or precedent to the bringing of this lawsuit occurred or accrued in the Northern District of California

12. This Court has jurisdiction to enter declaratory relief under 28 U.S.C. § 1331 and the Declaratory Judgment Act allowing adjudication AND both money and punitive relief for alleged violations of the Constitution and laws of the United States.

## General Factual Allegations

13. On or about March 24, 2021, Facebook, Inc. - now Meta Platforms, Inc. - terminated Plaintiff's access to his personal account on the Facebook platform.

14. Plaintiff depended upon the Facebook platform as a Public Forum.

15. Plaintiff has been hearing-impaired since childhood.

16. Plaintiff depended upon lip-reading skills – taught to him by his father – to compensate for his hearing impairment until his early 50s.

17. Plaintiff's eyesight began diminishing in his early 50s.

18. Plaintiff's lip-reading skills diminished as his eyesight diminished.

19. By the age of 60, PLAINTIFF'S ability to communicate with family, friends, fellow church members, society in general, and members of his age group, became dependent upon the Facebook platform.

20. Plaintiff has always been thankful for the Facebook platform which enabled PLAINTIFF to participate in the PUBLIC FORUM.

21. Plaintiff – now 70 years of age and with no access to the Facebook platform – has

become isolated from family, friends, fellow church members, society in general, and specifically, members of his age group.

22. Plaintiff's isolation is a result of the TAKING of access to the PUBLIC FORUM known as Facebook by Facebook, Inc. - now Meta Platforms, Inc. - while under COERCION by US government employees.

23. Plaintiff's isolation is a result of the TAKING of access to the PUBLIC FORUM known as Facebook by Facebook, Inc. - now Meta Platforms, Inc. - while being DIRECTED by US government employees.

24. Plaintiff is writing a book and is now restrained from advertising on the Facebook platform.

25. Plaintiff's book-in-progress is restrained from being advertised to it's targeted age group.

26. Facebook, Inc. - now Meta Platforms, Inc. - has a monopoly of over 80% of senior citizens who use social media on the internet.

27. Facebook, Inc. - now Meta Platforms, Inc. - is in violation of the Sherman Act.

28. A Bevens Claim is justified as a result of the DEFENDANTS actions that were coerced and/or directed by US Government employees – resulting in the deprivation of PLAINTIFF'S speech rights.

29. Concurring with the US Supreme Court decision in Biden v. Knight First Amend Inst at Columbia Univ, 141 S. Ct. 1220 – Supreme Court 2021; Justice Clarence Thomas established cause to review all prior decisions and doctrines determining COMMON CARRIER status for social media companies.

30. As of this filing, PLAINTIFF remains barred from the PUBLIC FORUM known as Facebook.

## COUNT ONE: CIVIL RIGHTS VIOLATIONS

### Free Speech in a Public Forum

31. Plaintiff re-alleges and re-states the foregoing jurisdictional allegations and general factual allegations.

32. The Facebook social media platform is built on "open-source" software created by an agency or agencies of the Us government.

33. US Code, Title 47, Chapter 5, Subchapter II § 230, (c) (2) (A) establishes a DUTY for Facebook, Inc. - now Meta Platforms, Inc. - to perform IN GOOD FAITH as CONSIDERATION for immunity.

34. US Code, Title 47, Chapter 5, Subchapter II § 230, (c) (2) (A) is a CONTRACT between all internet service and information providers whereby the provider is granted immunity from enumerated acts of censorship – performed in good faith – in consideration of the provider's efforts to develop and expand free speech on the internet.

35. On the first occasion whereby Facebook, Inc. - now Meta Platforms, Inc. - relied upon Section 230 for immunity it formally VALIDATED the CONTRACT between itself and the U.S. government.

36. Facebook, Inc. - now Meta Platforms, Inc. - has on many occasions – while defending itself in numerous lawsuits – formally VALIDATED the CONTRACT between itself and the U.S. government, by claiming immunity under US Code, Title 47, Chapter 5, Subchapter II § 230, (c) (2) (A).

37. Venetian Casino v. Local Joint Executive Bd., 257 F. 3d 937 - Court of Appeals, 9th Circuit 2001 is controlling law in COUNT ONE of this case.

38. Opinion by Circuit Judge Procter Hug (Venetian Casino v. Local Joint Executive Bd.,): "The question we are presented with in this appeal is whether a sidewalk constructed on private property to replace a public sidewalk, accommodating pedestrian traffic adjacent to Las Vegas Boulevard, is a public forum subject to the protections of the First Amendment. The Venetian Resort Casino sued Clark County, the Clark County District Attorney, and the Las Vegas Metropolitan Police Department (collectively, "the County"), seeking a declaratory judgment that the replacement sidewalk constructed on its property is not a public forum and an injunction requiring the County to recognize and enforce the Venetian's right to exclude labor union demonstrators from the sidewalk. The district court denied the Venetian's request for an injunction and granted summary judgment in favor of the County and intervenors, the Local Joint Executive Board of Las Vegas, Culinary Workers Union, Local No. 226, and Bartenders Union, Local No. 165 (collectively, "the Unions"), and the ACLU of Nevada. We have jurisdiction under 28 U.S.C. § 1291, and we affirm. CONCLUSION: Given the historically public

character of the predecessor's sidewalk, the replacement sidewalk's current public use, its similarity to and interconnection with Las Vegas' network of public sidewalks, and its dedication to public use under the Venetian's 1999 Agreement with the Department, we conclude that the Venetian's sidewalk constitutes a public forum subject to the protections of the First Amendment. Accordingly, we affirm the judgment of the district court. AFFIRMED."

39. Delivering the opinion of the court in Packingham v. North Carolina, 582 US 98, Supreme Court (2017), US Supreme Court Justice Anthony McLeod Kennedy wrote: "While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace — the "vast democratic forums of the Internet" in general, <u>Reno v. American Civil Liberties Union,</u> <u>521 U.S. 844, 868, 117 S.Ct. 2329, 138 L.Ed.2d 874"</u> <u>(1997),</u> and social media in particular. Seven in ten American adults use at least one Internet social networking service. Brief for Electronic Frontier Foundation et al. As *Amici Curiae* 5-6. One of the most popular of these sites is Facebook, the site used by petitioner leading to his conviction in this case. According to sources cited to the Court in this case, Facebook has 1.79 billion active users. *Id.,* at 6. This is about three times the population of North America. Social media offers "relatively unlimited, low-cost capacity for communication of all kinds." <u>Reno, supra,</u> <u>at 870</u>, <u>117 S.Ct. 2329</u>."

40. Further in the same opinion, Justice Kennedy wrote: "Even with these assumptions about the scope of the law and the State's interest, the statute here enacts a prohibition unprecedented in the scope of First Amendment speech it burdens. Social media allows users to gain access to information and communicate with one another about it on any subject that might come to mind. *Supra,* at 1735 -1736. By prohibiting sex offenders from using those websites, North Carolina with one broad stroke bars access to what for many are the principal sources for knowing current events, checking ads for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge. These websites can provide perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard. They allow a person with an

Internet connection to "become a town crier with a voice that resonates farther than it could from any soapbox." <u>Reno,</u> 521 U.S., at 870, 117 S.Ct. 2329. In sum, to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights. It is unsettling to suggest that only a limited set of websites can be used even by persons who have completed their sentences. Even convicted criminals — and in some instances especially convicted criminals — might receive legitimate benefits from these means for access to the world of ideas, in particular if they seek to reform and to pursue lawful and rewarding lives.

41. Facebook, Inc. - now Meta Platforms, Inc. - is a publicly-traded corporation that provides ACCESS to a PUBLIC COMMUNICATIONS GRID, commonly known as "the internet."

42. Lawful COMMUNITY STANDARDS – on the internet – are established by the users of the PUBLIC COMMUNICATIONS GRID, commonly known as "the internet."

43. Lawful COMMUNITY STANDARDS on the internet ARE NOT lawfully established by the internet service and information providers who merely provide access to the PUBLIC COMMUNICATIONS GRID, commonly known as "the internet."

44. Facebook, Inc. - now Meta Platforms, Inc. - has fabricated illegitimate "community standards" in order to control and censor constitutionally protected speech.

45. Facebook, Inc. - now Meta Platforms, Inc. - had no lawful duty to terminate the Plaintiff's access to the PUBLIC FORUM known as Facebook.

46. Facebook, Inc. - now Meta Platforms, Inc. - acted upon SOLICITED COMPLAINTS when it terminated the Plaintiff's personal Facebook account.

47. Facebook, Inc. - now Meta Platforms, Inc. - failed to act in Good Faith when it terminated the Plaintiff's Facebook account.

48. Plaintiff's injuries were caused by the termination of his access to the Facebook platform.

49. Monetary relief would remedy Plaintiff's injuries.

50. WHEREFORE, Plaintiff moves this Honorable Court to enter an Order for Seven Million US Dollars ($7,000,000.00) compensatory damages against Facebook, Inc. - now Meta Platforms, Inc. - together with punitive and such other relief as this Honorable Court may deem reasonable and just under the circumstances.

## COUNT TWO: CIVIL RIGHTS VIOLATION
### Conspiracy to Deprive Constitutional Rights

51. Plaintiff re-alleges and re-states the foregoing jurisdictional allegations and general factual allegations.

52. Dissenting with the decision(s) in Murthy v. Missouri, 144 S. Ct. 1972, 2024, US Supreme Court Justice Samuel Anthony Alito, Jr. wrote: "For these and other reasons, internet platforms have a powerful incentive to please important federal officials, and the record in this case shows that high-ranking officials skillfully exploited Facebook's vulnerability. When Facebook did not heed their requests as quickly or as fully as the officials wanted, the platform was publicly accused of "killing people" and subtly threatened with retaliation. Not surprisingly these efforts bore fruit. Facebook adopted new rules that better conformed to the officials' wishes, and many users who expressed disapproved views about the pandemic or COVID-19 vaccines were "deplatformed" or otherwise injured."

53. Facebook, Inc. - now Meta Platforms, Inc. - has created and implemented various programs, features, and campaigns under the coercion and direction of federal employees AND under the guise of "community safety" to control and censor constitutionally protected speech via SOLICITED COMPLAINTS. These include, but are not limited to:

A. Reporting Tools for "Misinformation" – Under the "Report Post" feature, users were encouraged and enabled to flag posts they didn't like as "False Information."

B. Third Party "Fact-Checking" – More than 80 organizations and private companies were accepted as arbiters of truth. Users were encouraged and enabled to report posts they didn't like to these organizations who had the capability to have posts they determined to be false removed and posters penalized or terminated.

C. "False Information Warnings" and "Forwarding Limits" – Posts flagged by "fact-checkers" were labeled as false and the distribution of the post would be diminished by algorithmic manipulation.

D. "Fighting Misinformation" – Ads and notices encouraged users to report false posts and "Help stop election misinformation."

E. "Community Review" – Users were encouraged and enabled to challenge and vote on whether a post was false and if it should be removed.

54. These and other such programs fostered and encouraged a conspiracy of values among a political segment of the Facebook-using US population to strategically CONSPIRE, COMPLAIN and DISENFRANCHISE – through censorship and account termination – those with disfavored views.

55. The Plaintiff is merely one of hundreds of thousands – perhaps millions – of Facebook users who have had their access to Facebook terminated because their posts were targeted for removal by fellow Facebook users with opposing views, or possibly other vindictive motives.

56. Facebook, Inc. - now Meta Platforms, Inc. - established the SYSTEMIC complaint system on their platform that encouraged and enabled co-conspirators to register complaints against the Plaintiff which Facebook, Inc. - now Meta Platforms, Inc. - utilized as justification to terminate the Plaintiff's account.

57. The SYSTEMIC complaint system established by Facebook, Inc. - now Meta Platforms, Inc. - simplified the process whereby anyone with nefarious or political motives could target and harm ANYONE posting on Facebook.

58. The Plaintiff's injuries were caused by Facebook, Inc. - now Meta Platforms, Inc. - acting in conspiracy with federal employees.

59. Monetary relief would remedy Plaintiff's injuries.

60. WHEREFORE, Plaintiff moves this Honorable Court to enter an Order for Seven Million US Dollars ($7,000,000.00) compensatory damages against Facebook, Inc. - now Meta Platforms, Inc. - together with punitive and such other relief as this Honorable Court may deem reasonable and just under the circumstances.

RESPECTFULLY SUBMITTED this 14th day of May, 2025.

/s/ Timothy Randolph Fletcher

Timothy Randolph Fletcher, Plaintiff, pro se

## CERTIFICATE OF SERVICE

I CERTIFY that a copy of this Second Amended Complaint was provided by email and CAND ECF to Michelle L. Visser, Attorney for the Defendant; Samual Garner, co-counsel; Brad Marcus, co-counsel.

/s/ Timothy Randolph Fletcher

Timothy Randolph Fletcher, Plaintiff, pro se